The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. All right, if we're ready, I'll call the first argued case, number 2012-01, Valiant Pharmaceuticals v. Actavis Laboratories FL. Mr. Steindler. Good morning, Your Honor, and may it please the Court. There are two terms at issue here, mixture and compressed blend. I'll start with mixture. It is common ground that sometimes mixtures are homogeneous and sometimes they're not. Mr. Steindler, so that we know what our starting point is here, do you agree that the term matrix is used in the specifications of the three patents means homogeneous composition? So, I'm not contesting that it does. We're not appealing that issue. I don't agree with it, but for purposes of this appeal, it is understood that matrix is a homogeneous composition, yes. Okay, all right. With respect to mixtures, as I say, they're not inherently homogeneous. You have to make them homogeneous. You've got to mix them, blend them, heat them. You've got to process them in some way, depending on the kind of ingredients that you're working with, to create a homogeneous mixture. It takes work, and if you don't do that, the mixture is not going to be homogeneous. That's true in ordinary life. That's true in the pharmaceutical arts, and we use chocolate chip ice cream as example, but take your pick. There are lots of others. They're all mixtures, but they're not necessarily homogeneous. But if mixture means the same thing as matrix in the specifications of these patents, then it's homogeneous, right? Yes, but it does not, and I'll get to that in just a second, but that's their basic argument. Their central argument is that mixture means the same thing as matrix, that two terms are interchangeable, but I'll come to that in a moment, if I could. Counsel, let me ask you this question before we get a little bit further into your argument. When I started studying this case, it seemed awfully familiar to me, and it turns out that I was on the panel that heard Uterus One, the prior decision in this case, and indeed, we're dealing with almost identical specification, and everything seems to be pretty much the same, except that you've taken a couple of words and now come to us with a different definition for just the words, but there's nothing that has changed that I can see that's relevant change in the specification. Aren't we looking at the same horse, but of a different color? We are looking at different claim terms, and that's why they're importantly different. In this patent, it is teaching that you can either have homogeneous cores or not homogeneous cores. In the first case, the claim term that was at issue was to a homogeneous core. You will recall, Judge Reyna, that it was to a macroscopically homogeneous composition. That was what was litigated in the first claim. The claim terms that we're litigating now, that issue here, mixture and compressed blend, were not at issue in that first case, and as was previously said, the argument is, well, they're interchangeable, but they are not. The claims appear to be the same. It's just that you've changed a couple of words in the claim. Well, with respect, changing words in a claim is important. These claims are not to homogeneous compositions. They're to mixtures, and mixtures, the plain and ordinary meaning of the word mixture, includes both homogeneous compositions and non-homogeneous compositions. You can see the patent is teaching that. You can see that most clearly from the examples. Some of these examples specify mixing to homogeneity at intermediate steps, but not at the final step. Example two is a good illustration. It calls for mixing to complete homogenization at an intermediate step, but then at the end, you dump in double the amount of ingredients and you just mix it for five minutes. It doesn't specify mixing to homogeneity at that final step, and this example is teaching that homogeneity is not important in that final mixture. Where it's important, where homogeneity is important, it's specified, and where it's not, it's not. One step, mix to homogeneity. Next step, not. That's not just silence. That is clear teaching that the final mixture does not have to be homogeneous. And if there was any doubt about that, just look at example C. Example C does specify that you mix to homogeneity at that last step. The juxtaposition of these examples makes it clear as a bell. When homogeneity is required, it's specified, and when it's not, it's not required. But let's take a step back for just a second. What's the question here? The question is not whether the patent is affirmatively teaching that mixtures don't have to be homogeneous. That's the plain and ordinary meaning of the term. They could either be homogeneous or not homogeneous. The patent certainly teaches that the mixtures don't have to be homogeneous, but that's not the question. The question under Thorner is whether there's lexicography or disclaimer that limits the plain and ordinary meaning to homogeneous mixtures. The answer is no, we don't have that here. And frankly, to the extent there is lexicography, it confirms plain and ordinary meaning. There's an express definition of mixture in the prosecution history. It's that Wikipedia definition where the patentee wrote in chemistry, quote, a mixture is a material made up of two or more different substances which are mixed, full stop. That's plain and ordinary meaning defined there in the intrinsic record. The Thorner case says a patentee is free to choose a broad term and will get the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope. That didn't happen here. Now, the argument was, well, mixture means the same thing as matrix. Matrix is homogeneous, therefore mixture is homogeneous. But that syllogism breaks down. These two terms are not interchangeable. Let me make two quick... And then in the first step, you set A, talk about incorporating the active ingredient with the other ingredients, and then B refers to the result as a matrix. The matrix obtained in A. So doesn't that pretty clearly suggest that mixture is the same as the matrix and that what we have here is homogeneous composition? Not at all. First of all, the patent teaches, if you look at the abstract, it talks about matrix granules. You've got matrices, matrix granules that have, as you just described, the active ingredient englobulated in that little matrix. But those are particles. There's nothing in this patent that says the whole tablet core has to be a matrix. And also, the patent teaches that you can include functional excipients. You see that in example A. You can add binders, you can add lubricants. Homogeneity is not important or essential to the functioning of this invention. What's essential is having these matrix-forming excipients in there. And the cores will include them, but the whole core does not have to consist of a matrix. And these claim terms are fundamentally different. And bear this in mind, matrix and mixture are not interchangeable. Two quick points. One, by definition, a mixture has to have two or more ingredients. That's the definition of a mixture. But in the patent, the patent teaches that a matrix can be just a single ingredient. In example 11, for example, the inner matrix is just acetyl alcohol, one ingredient. So right off the bat, matrix is different from mixture. Those are not interchangeable. And more fundamentally, though, the patents teach that you can start from a mixture to create a matrix. It teaches various ways of doing it. Kneading, mixing, heating, stirring. But by definition, if you have to manipulate a mixture to make a matrix, mixture and matrix can't mean the same thing. That starting mixture is not a matrix until you make it into a matrix. Those terms are not interchangeable. And as I say, remember, the patent teaches that you can add functional excipients here. And when you mix in those functional excipients, you're not creating a matrix at all. You're creating a mixture, which is not necessarily homogeneous. Plain and ordinary meaning includes both homogeneous and non-homogeneous. There's no reason, there's no basis for limiting it just to homogeneous matrix. I see I've effectively run out of my time here. So if there are any other questions, I'd like to reserve the rest of my time for Roberto. Any more questions at this point for Mr. Steindler? No, I'm fine. All right. Good. Thank you. Well, then we'll hear from Mr. J. We'll save you a full rebuttal, Mr. Steindler. Okay, Mr. J. or in the brief on compressed blend, I do want to make clear later in the presentation that there are separate and independent arguments for why compressed blend connotes homogeneity. But as Mr. Steindler did, I will start with mixture. And I think that the detailed disclosure of the invention, which is where the colloquy with Judge Dyke began, includes the most important contextual indications of what mixture means in the context of these claims in this patent with this prosecution history. In addition to the point that Judge Dyke brought out in the colloquy with my friend, I would point the court to the interchangeable use of matrix and mixture in column four in the paragraph that begins at line 53. This is talking about the matrix that is reduced into granules. And up above, at the top of the column where it's talking about that matrix, it just describes it as an inert matrix. And then down here, after some further explanation, it refers back to it and says that granulation can be done by any process which retains the homogenous dispersion and matrix structure of the starting mixture. And there are two important points about that. One is that this is both a matrix and a mixture. But second, and really more importantly, and this is the key point that I hope the court will take from this and another example that I'll give, that it's just not the case that where this specification means homogeneity, it says homogeneity. Quite to the contrary, here's a good example of where the specification says up above just matrix. And it refers back to it as having a homogeneous dispersion much later because it's understood that that term connotes homogeneity. And it also uses it interchangeably. It says the starting mixture is homogeneously dispersed and has a matrix structure. And I think that's confirmed in the next column, column five, where here you're talking about the final step that produces the final product. This is in column five, the second full paragraph beginning at line six. The lipophilic matrix granules containing the active ingredient are mixed. What happens, you see in the next paragraph, the compression of the mixture yields a macroscopically homogeneous structure in all its volume, namely a matrix. So here again, the same two points. You see the mixture and the matrix being used interchangeably. And you also see that this mixture, even though in the first quote that I read, it doesn't say how long it's mixed for, it does not specifically say it is mixed to homogeneity. Once that mixture is finished and compressed, you have a macroscopically homogeneous structure in all its volume, namely a matrix. So in other words, even though in that first paragraph, it didn't say mixing to homogeneity, that is exactly what the patent means. And that is made clear by the fact that this statement in the second paragraph says that the compression yields a macroscopically homogeneous structure in all its volume. That is consistent with how the examiner understood the claims. We've pointed the court to the statement at 3717 of the appendix in which the examiner clearly understood that the core, the tablet core, and not just the excipients, would be a homogeneous structure. So what's your view of the use of the word macroscopically? Doesn't that support the position that if it were not macroscopic, but microscopic, you might have a different view of this substance? I understand the question, Judge Newman, but I think that the use of macroscopic here is simply to clarify what frame of reference homogeneity is being assessed at. And that was the contested issue in the first Euceris case in which, at that time, the plaintiffs were asking the court to infer that a matrix was a macroscopically homogeneous structure. And they wanted the term macroscopically in the claim construction because it was important to understand at what frame of reference it was homogeneous because heterogeneity down to the atomic or molecular level didn't change the fact that the substance could be homogeneous for purposes of the patent. So I think that this specification was, of course, originally written to support those claims, and although it's been changed to claim a mixture, and the excipient structure that's claimed in the 878 patent still refers to macroscopic homogeneity, and that's the frame of reference that we're looking at. But to turn for a moment to the prosecution history statement, this statement by the examiner makes pretty clear that the examiner understood the applicant to be advocating for a tablet core that was homogeneous. And that, of course, is consistent with the position that the plaintiffs took in the prior case, and this is summarized at footnote 10 of the district court's opinion, referring back to the claim construction hearing that the court had held in the prior case. The plaintiff's position, as reflected in the slides that it put up in that case, was that the core was macroscopically homogeneous, not just the structure. I understand that my friend on the other side says that that's not what the submission by the applicants in the prosecution history means, that it's just referring to the excipient structure as macroscopically homogeneous. And I understand the point, but respectfully disagree with it, and I think that the most natural reading of that part of the prosecution history is the one that the examiner had. So even if it didn't matter that the examiner had demonstrably read it that way and said so in the prosecution history, which would be available for anyone trying to discern the scope of these claims to read, I think even if you look at the submission at page 2389 of the appendix, you'll see that the emphasis in this paragraph is on the mixture. It tells you in the first sentence that the tablet core contains a mixture, and then in the second sentence it tells you what the excipients are in the excipient structure. In the third sentence it goes back to just saying other recited components for the excipient structure, because that's not the focus of this sentence, the key sentence. Instead, it says it comprises a mixture of budesonide and other recited components in the form of a macroscopically homogeneous structure, which controls the release of the budesonide from the tablet in the gastrointestinal tract. Now, my friend says, well, that's just talking about the claim language, and I agree with that up to a point, and here's what I mean by that. The claim language, and this is the part of claim one of the 878 patent that's at the end of the claim. The budesonide is dispersed in the macroscopically homogeneous structure, and the macroscopically homogeneous structure controls the release kinetics of the budesonide. So I think this sentence is naturally read to refer to both parts of that, and so the budesonide is dispersed in this macroscopically homogeneous structure. What does the dispersion of the budesonide in that structure produce? It produces itself a homogeneous structure, and that's what the tablet core consists of, and that is what the statement of the prosecution history is talking about. And I want, if I may, to switch to compressed blend for a moment. Now, I understand that my friends on the other side have said at page 36 of their brief that the meaning of mixture and the meaning of blend are the same, and I think that the definitions that we've given for blend at pages 54 to 55 of our brief are really quite powerful evidence that if that's right, then we win as a matter of plain and ordinary meaning, because the plain and ordinary meaning of compressed blend is a uniform combination of two or more materials. Another example is a mixture so combined as to render the parts indistinguishable from one another, and the plaintiffs really have no response to that ordinary meaning of blend. Really, all they've come back with is example one, but I want to point the court first to the two things in the specification that, I'm sorry, to the place in the specification that supports both parts of compressed blend. So, during the application process, when they amended these claims to add the term compressed blend, they pointed to written description support for compressed, and they pointed to written description support for blend. The only place it overlaps between the two of them is example three, and so I'd like to take the court to that, to example three of the 799 patent. And that is at page 96, and as my friend Mr. Steinler said, no, I'm sorry, that's a different example, I apologize. In example three, the mixture is blended until a homogeneous powder dispersion is obtained, and then the powder mixture is subject to compression. So, it's quite clear that the blend results in a homogeneous composition, and that mixture is subjected to compression. So, the only place where you have compressed blend in this, you have compression of a blend in this specification, we know that it is a homogeneous blend being compressed. Now, I understand that there are some other places in the specification that support individual terms. We think, for example, that the part in column five that I spent some time on before, which is expressly cited as support for compression, there too, it's the compression of the mixture yields a macroscopically homogeneous structure in all its volume. So, we think these are really quite powerful points on our side for compressed blend. And my friends on the other side just point to example one as really the only thing they do with compressed blend in their briefing, and they say, well, it doesn't stay homogeneous in the final step. But what it does say is after a final blending, tablets of around 300 milligrams of unitary weight are generated. This is column 14, lines eight and nine. And as I said, the ordinary meaning of blend is to mix thoroughly, you know, or to produce a homogeneous combination, a uniform combination. And so we think that it's not necessary to say homogeneous here, it's a final blending that produces a homogeneous composition. And as I say, we think that if the other side wants to link the two, then that's fine because the meaning of blend clearly supports our interpretation, which is also consistent with the now accepted construction of the term matrix. But even if they were delinked, it's important for the court to understand that the compressed blend patent is the only patent that's still in force, and it adds an extra 11 years of patent term. So, it is important to address that term on its own merits. And we think that the ordinary meaning and the intrinsic record strongly support us on that term. With that, unless the court has further questions, we're ready to submit our case. And any more questions for Mr. Jay? Okay, all right. Mr. Stanley, you have your rebuttal time. Thank you, Your Honor. Let me just make a few points. First, what I did not hear is any contesting of the plain and ordinary meaning of mixture. The plain and ordinary meaning of mixture clearly and obviously includes both homogeneous and non-homogeneous mixtures. And in order to limit the plain and ordinary meaning, you have to have disclaimer, which is not here. My friend went to the detailed disclosure of the invention. What he forgot to mention was the detailed disclosure of the invention is an example. It's an embodiment. That method for making the tablets here is just an exemplary method. Many of the examples don't follow that method. It says on line 55 in column 3, compositions can be prepared by a method. It is common ground that this is an example. Everything that follows it are examples and embodiments. Including the statements in column 4, all of those pertain to particular embodiments. These particular embodiments do indeed reflect homogeneous compositions. As we all know, the Thorner case, for example, just because every single embodiment happens to pertain to one portion or one part of a common and ordinary meaning, that does not limit the plain and ordinary meaning of the term. Same is true with respect to the statements in column 5 about compressing to get a matrix. My friend acknowledges in his papers that that's an embodiment. We can't go from an embodiment to a disclaimer. Point to first. Point to second. With respect to the statements of the examiner, we all know that statements of the examiner are not controlling. Examiner's statements do not define claims. This court's in the 3M case said that. We rest on statements made by the patentee over conflicting statements by an examiner because it's the patentee's words that define the claim. In the Inova Pure case that we cite in our papers, the examiner can't disclaim subject matter. If you look after the examiner made his statements, the applicants corrected that. There was a Rule 312 amendment that was filed. It's at appendix page 2378. They said quite clearly that the examiner had that wrong and that's on page 2378 and 2379. It says the amendment amended the claims to make clear that the tablet cores consisting of a mixture does not have layers. That's why they were distinguishing the prior art, not because it was or wasn't homogeneous. With respect to compressed blend, my friend is citing a bunch of dictionary definitions, which he now says are plain and ordinary meaning. Those dictionary definitions are not controlling. There are many other dictionary definitions, some of which we include in our papers. All you have to do is look at the example that my friend cited himself, example 3. Example 3 describes blending to homogeneity. If you have to blend something to get it to be homogeneous, it is not inherently homogeneous, just like mixture. Blends aren't necessarily homogeneous. You have to make them homogeneous. That's exactly what's taught in the example that is described here. In that particular example, you blended it to become homogeneous, but that's just an example. If we're talking about what the plain and ordinary meaning of blend means, the patent is quite clearly teaching that a blend is not necessarily homogeneous. You have to make it homogeneous. There's nothing here in this patent that limits either compressed blend or mixture to just homogeneous blends, just homogeneous mixtures, because their plain and ordinary meaning encompass both. Unless there are other questions, that's my submission. Any more questions, Mrs. Feindler? All right, thank you. Thanks to both counsels. The case is taken under submission.